# EXHIBIT A

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (Pa. Id. #77474)
Lauren KW Brennan (Pa. Id. #316461)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Filed and Attested by the Office of Judicial Records 11 SEP 2026 01:10 pm I. LOWELL

Attorneys for Plaintiffs

| | |
|---|---|
| Ariann M. Skinner, Brenda Tessler & Lena Ross, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>Bridgecrest Credit Company, LLC; Carvana, LLC,<br>Defendants. | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>CIVIL TRIAL DIVISION<br><br>NO.<br><br>**CLASS ACTION**<br>JURY TRIAL DEMANDED |

## NOTICE TO DEFEND

### NOTICE

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

### AVISO

**Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (Pa. Id. #77474)
Lauren KW Brennan (Pa. Id. #316461)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

**ROBERT P. COCCO, P.C.**
Robert P. Cocco (Pa. Id. #61907)
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200
bob.coco@phillyconsumerlaw.com
Attorneys for Plaintiffs

| | |
|---|---|
| Ariann M. Skinner, Brenda Tessler & Lena Ross, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>Bridgecrest Credit Company, LLC;<br>Carvana, LLC,<br>Defendants. | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>CIVIL TRIAL DIVISION<br><br>NO.<br><br>**CLASS ACTION**<br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs, Ariann M. Skinner, Brenda Tessler, and Lena Ross ("Named Plaintiffs" or "Class Representatives"), by and through their undersigned attorneys, bring this consumer class action against Defendants, Bridgecrest Credit Company, LLC ("BCC") and Carvana, LLC ("Carvana"), and allege as follows:

## PARTIES

1. Plaintiff, Ariann M. Skinner ("Skinner"), is an adult individual presently residing at 1361 S. 54th St., Philadelphia PA 19143.

2. Plaintiff, Brenda Tessler ("Tessler"), is an adult individual presently residing at 317 Wall Ave, Pitcairn PA 15140.

3. Plaintiff, Lena Ross ("Ross"), is an adult individual presently residing at 1507 Federal St., Philadelphia, PA 19146.

4. Defendant Carvana, LLC is a licensed Pennsylvania used automobile seller and dealer with a dealership and established place of business located at 1043 N. Front Street, Philadelphia, PA 19123.

5. Defendant Bridgecrest Credit Company, LLC ("BCC") is an Arizona limited liability company doing business in the Commonwealth of Pennsylvania with a principal place of business located at 4020 E. Indian School Road, Phoenix, Arizona 85018.

## FACTUAL ALLEGATIONS

### A. Carvana's Business Model Caused National Title and Registration Delays

6. Carvana emerged onto the used car market in 2013 with a national e-commerce sales model allowing it to sell cars online and deliver them to consumers nationwide. Its business model seeks to apply a uniform online car-buying experience to what has traditionally been, and remains, a state-by-state governed and specific in-person process. Specifically, across the nation, each state has its own laws, vehicle-titling and registration requirements and processes. Not long after its introduction into the used-car market, flaws with the application of Carvana's "one-size fits all" approach emerged all over the country, with various states suspending it and/or imposing other sanctions related specifically to its repeated failure to timely transfer title and complete vehicle registration including the following:



Case ID: 260901593

a. Between June 2021 and July 2022, the Maryland Motor Vehicle Administration imposed on Carvana 386 late title fee infractions totaling $17,121 in fines on 10% of cars Carvana sold in the state during that timeframe.

b. On May 10, 2022, the Illinois Secretary of State suspended Carvana's sales license due to mishandling of paperwork related to its vehicle sales, including the misuse of issuing out-of-state temporary registration permits and for failing to transfer titles.

c. In October 2022, Michigan Department of State suspended the license of a Carvana dealership for "imminent harm to the public" and for untimely delivery of titles.

d. In August 2021, the North Carolina Department of Motor Vehicles suspended Carvana's dealers license in Raleigh for, among other violations, failing to deliver titles to the DMV and issuing out-of-state temporary tags to North Carolina purchasers.

e. In December 2021, the Florida Department of Highway Safety and Motor Vehicles sent an email to Carvana stating its concern with Carvana's apparent inability to apply for title within 30 days of the sale for hundreds of Carvana vehicles.

7. In late 2022, the Pennsylvania Department of Transportation ("PennDOT") suspended Carvana's license at its Ridgeville and Philadelphia dealer locations for its untimely and deficient processing of title and registration related to sales of vehicles to Pennsylvania residents. The Notices of Suspension specifically identified over 40 individuals with title and registration defects causing completion delays. In January of 2025, Carvana entered into a Consent Agreement and Order with the Commonwealth of Pennsylvania that required it to pay certain fines, implement certain practices to remedy its prior violations and accept a period of probation for 3 years.

8. A class action premised upon Carvana's title and registration delays for a class of Pennsylvania residents is currently pending in the United States District Court for the Eastern District of Pennsylvania. *Jennings v. Carvana, LLC*, et al., 5:21-cv-05400-MRP/2:23-cv-02068-MRP (E.D. Pa. 2021).



Case ID: 260901593

**B. Defendants' Sales, Financing and Repossession Practices**

9. At all times relevant hereto, at the point of sale for financed vehicles, Carvana required that consumers such as the Plaintiffs herein enter in a retail installment contract and security agreement ("RISC") with it. Pursuant to its standard RISC, Carvana takes a security interest in the vehicle allowing it to repossess the vehicle in the event that the consumer-buyer defaults and/or does not make the required payments in a timely manner. Carvana asserts a lien on the vehicle, which is documented on the vehicle's title and temporary registration documents provided at the time of sale.

10. In addition, pursuant to its standard RISC, Carvana charges and collects upfront from each consumer buyer various discrete charges that pertain to the registration and titling of the vehicle, which fees are supposed to be paid to state and local officials. These discrete charges include a Pennsylvania registration fee, a title fee, a license plate fee, a lien-filing fee, and sometimes depending upon the jurisdiction, a local use fee ("TNR Fees"). Each of these fees are usually for different amounts. In violation of Pennsylvania law, however, Carvana does not separately itemize the various TNR Fees on its standard RISC. Rather, it lumps them all together as one unitary sum and includes them as a singular amount at line 4c of a RISC and categorizes them as "Paid to Public Officials (incl. filing fees)." In doing so, Carvana expressly promises consumer-buyers timely titling and registration of their vehicles in exchange for the consideration paid.

11. Following the sale, or contemporaneous with it, Carvana assigns/transfers the servicing of the underlying loan secured by the RISC to Defendant BCC. BCC handles the monthly billing for the account, the crediting of any payments, collection activities relating to any overdue amounts, credit reporting for the account, and, where applicable at Carvana's direction, ordering repossession of the vehicle and the institution of suit for any replevin actions and/or deficiency



Case ID: 260901593

actions. Throughout the entire life of the loan, Carvana remains the sole secured party notwithstanding BCC's servicing activities. Notwithstanding this fact, when undertaking repossession, Defendant BCC holds itself out as the party to whom the consumer owes payment (i.e. the creditor) and fails to properly disclose Defendant Carvana as the secured party in violation of Article 9 of the Uniform Commercial Code ("UCC"). Yet when Defendant BCC sues consumers on Carvana's behalf in connection with replevin actions, it identifies itself merely as an agent and servicer and Defendant Carvana as the lienholder/secured party.

12. When Carvana does repossess a vehicle, and the consumer reinstates/redeems the vehicle and account in a timely manner, Carvana nevertheless transfers title and ownership back to itself in violation of the UCC and fails to return title and registrations back to the consumer when they retake possession.

**C. Facts Pertaining to Class Representatives**

***Plaintiff Skinner***

13. On or about July 28, 2022, Plaintiff Skinner entered into a retail installment contract ("Skinner RISC") with Carvana to purchase a 2017 Kia Optima, VIN # XXXX155648 ("the Skinner Vehicle"). (A copy of the Skinner RISC is attached hereto as Exhibit A).

14. Among other things, the Skinner RISC failed to itemize the TNR fees paid to public officials in connection with the transaction, and instead reflected these fees only as a total sum of $147.00.

15. In or around November 2025, Plaintiff Skinner fell behind on her payments relating to the Kia Optima.

16. Thereafter, in or around January 2026, Defendants repossessed the Skinner vehicle at Plaintiff Skinner's residence.

17. After the repossession of the Skinner vehicle, BCC sent Plaintiff Skinner via mail



Case ID: 260901593

a document dated January 28, 2026, entitled "NOTICE OF DISPOSITION AND OUR PLAN TO SELL PROPERTY" (the "Skinner NOI") that, among other things, advised her of the repossession, along with its intent to dispose of the Skinner Vehicle. (A copy of the Skinner NOI is attached hereto as Exhibit B).

18. Though unknown to Plaintiff Skinner at the time, BCC sent Plaintiff the NOI on behalf of Carvana as its agent and pursuant to its assignment as servicer, and pursuant to Carvana's instructions.

19. Contrary to the UCC and Pennsylvania law, 13 Pa. C.S.A. §9613 and §9614, the NOI did not describe the secured party, which was Carvana. In fact, nowhere did the NOI reference Carvana at all. It instead falsely portrayed the secured party as BCC in the upper left of and throughout the document.

20. The NOI sent to Plaintiff Skinner was a standardized form document that Defendants use in the regular course of business when repossessing vehicles and which they use with consumers nationwide. BCC's billing platform and software refers to such letters through the code NOI.

21. As required by the UCC, the NOI provided Plaintiff Skinner with a fifteen (15) day period of time to redeem her vehicle and reinstate her loan to a current balance prior to disposition of the collateral (the "grace period").

22. However, in violation of the UCC and Pennsylvania law, in breach of Defendants' promise, Defendant Carvana transferred title of the Skinner Vehicle to itself prior to expiration of the grace period and has retained it since.

23. Plaintiff Skinner contacted Defendant BCC on January 28, 2026 to discuss her intention to reinstate her account, and in February of 2026 made such payment in a timely manner to retake possession of the Skinner Vehicle. Plaintiff Skinner picked up her vehicle at the auction

house location of 3150 Bethlehem Pike, Hatfield, PA 19440 provided by Defendants in the NOI.

24. However, notwithstanding the fact that Plaintiff Skinner reinstated her loan by payment of the outstanding arrears in a timely manner, Defendant Carvana failed to transfer title back to her when she retook possession of the Skinner vehicle even though Plaintiff Skinner at all times remained the lawful owner, and her chain of ownership had never lapsed.

25. To date, Carvana has failed to transfer title to the Skinner Vehicle back to Plaintiff Skinner.

26. Retitling the Skinner Vehicle and transferring ownership back to itself prior to the expiration of the reinstatement period and continuing to withhold title transfer after Plaintiff Skinner reinstated her account by payment of all arrears and retook possession of the vehicle was commercially unreasonable under the UCC and Pennsylvania law.

27. On or about August 19, 2026, the Philadelphia Parking Authority (the "PPA") towed and impounded the Skinner Vehicle while it was inadvertently parked in a bus zone. Because the vehicle is still titled in Carvana's name, the PPA will not release the vehicle to Plaintiff Skinner and she remains unable to retrieve and use it.

28. Plaintiff Skinner engaged in numerous phone calls and other communications with Defendants in which they promised Carvana would transfer title to the subject vehicle back to Plaintiff Skinner so that she could secure permanent registration in her name as it was required to do pursuant to the reinstatement agreement between Plaintiff Skinner and Defendants and the terms of the Skinner RISC.

29. On or about August 28, 2026, after she again implored Carvana to transfer title to her so that she could retrieve her vehicle, Defendant Carvana emailed Skinner acknowledging that the Skinner Vehicle title was still in Carvana's name.

30. Currently, the Skinner vehicle is scheduled to be sold by the PPA on September 22, 2026. Despite multiple communications with Carvana and BCC, Plaintiff Skinner has no remedy to obtain title to the Skinner vehicle except filing the instant litigation.

31. Plaintiff Skinner relied upon the Skinner RISC and Defendants' promises to have the vehicle properly titled and registered in her name with the Commonwealth of Pennsylvania as evidenced by her reinstatement payments and agreements in the RISC and her possession of the purchased vehicle, including the fees imposed and collected by Carvana to be paid to public officials in connection with titling and registering the vehicle to Plaintiff.

***Plaintiff Tessler***

32. On or about June 18, 2020, Plaintiff Tessler entered into a retail installment contract and security agreement with Carvana ("Tessler RISC") to purchase a 2017 Hyundai Tucson VIN # XXXX436213 ("the Tessler Vehicle") from Carvana's Winder Georgia dealership. (A copy of the Tessler RISC is hereby attached as Exhibit C).

33. Among other things, the Tessler RISC failed to itemize the TNR fees and instead reflected them as a lump sum charge of $140.00 at line 4c for amounts paid to public officials.

34. Pursuant to the Tessler RISC and Plaintiff Tessler's payment of the TNR fees, Carvana was contractually obligated to provide Ms. Tessler with timely title and permanent registration prior to the expiration of the vehicle's temporary registration period and further comply with Pennsylvania law.

35. Carvana failed to deliver the Tessler Vehicle to Plaintiff, and instead delivered a different 2017 Hyundai Tucson with differing mileage and features. After delaying payment towards the Tessler RISC for Carvana's failure to deliver the vehicle contracted for and believing Carvana would resolve the matter which it then failed to resolve, Plaintiff began making payments towards the Tessler RISC in the third month following the date of sale.

36. Pursuant to its standard procedures for purchases of out-of-state vehicles, Defendant Carvana provided Plaintiff with a temporary operating permit ("TOP") and temporary registration from a state other than Pennsylvania.

37. Despite its contractual promises, repeated in numerous texts and other communications to Ms. Tessler post-sale in 2020 and 2021, Carvana failed to timely transfer title and failed to allow Plaintiff Tessler to obtain permanent registration before the expiration of the TOP as it was required to do so pursuant to Plaintiff Tessler's RISC and Pennsylvania law. As a result, Carvana was in default of the RISC.

38. More than 90 lapsed days from the point of sale, and Carvana still had not delivered an assignment and warranty of title, and failed to provide her with permanent registration as it was required to.

39. As a result of its default and failure to deliver an assignment and warranty of title within 90 days of purchase, Carvana was legally required to accept return of Plaintiff Tessler's vehicle and refund her the purchase price less actual depreciation of the vehicle pursuant to Pennsylvania law. 75 Pa. C.S.A. §1111(a.1).

40. Instead, and despite the lack of any legal right or authorization to do so, Carvana provided Plaintiff Tessler with numerous TOPs from other states to Plaintiff only after Plaintiff Tessler's repeated complaints, disputes and requests, which were prompted by her anxieties and concerns about confrontation with law enforcement in her small town of residence.

41. When it provided the aforesaid improper temporary registrations from states other than Pennsylvania, Carvana concealed from Plaintiff Tessler that it was not authorized by those states to do so.

42. Plaintiff Tessler relied upon the Tessler RISC and Carvana's promises to have the vehicle she purchased delivered and properly registered in the Commonwealth of Pennsylvania as

evidenced by her agreements in the RISC and her payments on the purchased vehicle including the fees imposed and thereafter collected by Carvana to be paid to public officials in connection with titling and registering the vehicle to Plaintiff.

43. As a result of the failure of Carvana transfer title to the Tessler Vehicle to her name and expiration of temporary plates provided to her, Plaintiff Tessler was unable to drive the vehicle for much of 2021.

44. Plaintiff Tessler demanded that Carvana deliver title to her vehicle, but Carvana failed to do so.

45. During 2021 while driving the vehicle without an active temporary plate on her vehicle, Plaintiff was stopped by eight (8) Pitcairn police vehicles for operating an unregistered vehicle.

46. Unknown to her at the time, Carvana did not transfer title to the Tessler Vehicle to Plaintiff Tessler until August 17, 2021 ("Tessler Vehicle Title"), one (1) year and two (2) months after the date of purchase.

47. The Tessler Vehicle Title shows that Carvana was the secured creditor with a lien on the Tessler vehicle.

48. On or about September 17, 2021, a repossession agent acting on behalf of Defendants repossessed the Tessler vehicle at Plaintiff Tessler's residence based on the two (2) missed payments after the date of sale due to delivery of the incorrect vehicle.

49. In or around late September 2021 after the repossession of the Tessler vehicle, BCC sent Plaintiff Tessler via USPS certified mail a document entitled "NOTICE OF DISPOSITION AND OUR PLAN TO SELL PROPERTY" (the "Tessler NOI") that, among other things, advised her of the repossession, along with its intent to dispose of the Tessler Vehicle. Though unknown to Plaintiff Tessler at the time, BCC sent Plaintiff the NOI on behalf of Carvana as its agent and

pursuant to its assignment as servicer, and pursuant to Carvana's instructions.

50. Contrary to the UCC and Pennsylvania law, 13 Pa. C.S.A. §9614, the NOI did not describe the secured party, which was Carvana. In fact, nowhere did the NOI reference Carvana at all. It instead falsely portrayed the secured party as BCC in the upper left and throughout the document.

51. The NOI sent to Plaintiff Tessler was a standardized form document that Defendants use in the regular course of business when repossessing vehicles and which it uses with consumers nationwide.

52. In addition to failing to describe the secured party in the NOI, Defendants' repossession of Plaintiff Tessler's vehicle was not a commercially reasonable disposition of the vehicle given that they had defaulted on the RISC first, and that Plaintiff Tessler was entitled to return of the vehicle and refund of her purchase price (minus reasonable depreciation) given that Carvana failed to deliver an assignment and warranty of title to her within 90 days of the date of purchase. Repossession of the vehicle under those circumstances was an egregious and blatant breach of contract and violation of Pennsylvania law, and is in fact completely commercially unreasonable.

53. Unknown to Plaintiff Tessler, on or about November 10, 2021, Carvana filed title paperwork with PENNDOT falsely indicating that Carvana had purchased the Tessler Vehicle from Plaintiff Tessler on or about August 17, 2021.

***Plaintiff Ross***

54. On or around November 4, 2021, Plaintiff Ross purchased online from Defendant a 2015 Kia Forte, VIN# ending in XXXX406480 (the "Ross Vehicle") by executing a written retail installment contract (the "Ross RISC"). (A copy of the Ross RISC is attached hereto as Exhibit D).

55. Among other things, Ross RISC failed to itemize the TNR fees and instead reflected them only as a lump sum charge of $140.00 for amounts paid to public officials.

56. Pursuant to the RISC and Plaintiff's payment of the TNR fees, Carvana was contractually obligated to provide Ms. Ross with timely title and permanent registration prior to the expiration of the vehicle's temporary registration period and further comply with Pennsylvania law.

57. Ross fulfilled all of the requirements of her RISC agreement with Carvana.

58. Plaintiff Ross received the Ross Vehicle from Carvana with a temporary license tag.

59. Thereafter Plaintiff Ross received a $40.00 ticket from the Philadelphia police associated with lack of permanent registration of her vehicle.

60. To avoid any future confrontations with law enforcement, plaintiff refrained from driving the vehicle as much as possible until Carvana finally issued her permanent registration to the vehicle.

61. Plaintiff relied upon the RISC and Carvana's promises to have the vehicle properly registered in the Commonwealth of Pennsylvania as evidenced by her agreements in the RISC and her payments on the purchased vehicle (which included the fees imposed and thereafter collected by Carvana that are specified above).

62. In or around October 2023, Carvana finally provided Plaintiff Ross permanent registration for her vehicle.

**CLASS ACTION ALLEGATIONS**

63. The prerequisites of Pa. R.C.P. 1702 can be met by this proposed class action.

64. Plaintiffs bring this class action on behalf of themselves and all other similarly situated individuals pursuant to the Pennsylvania Rules of Civil Procedure on behalf of the following classes:

> **NOI CLASS**: All natural persons who: a) were residents of Pennsylvania at a time when they entered into a RISC with Carvana at a time prior to November 21, 2022; b) from whom Defendants repossessed such vehicle and/or ordered its repossession; c) and who were sent a NOI substantially in the form of the Skinner NOI during the relevant time period and up through the date of class certification.
>
> **NOI UCC NATIONAL CLASS**: All natural persons who: a) were residents of the United States of America at a time when they entered into a RISC with CARVANA for the purchase of a vehicle; b) from whom Defendants repossessed such vehicle and/or ordered its repossession; c) who were sent a NOI substantially in the form of the SKINNER NOI prior to the repossession; d) whose RISC did not contain an arbitration clause; e) and who resided in a state that had a single document rule during the relevant time up through the date of class certification.
>
> **REINSTATEMENT CLASS:** All natural persons who: a) were residents of Pennsylvania at a time when they entered into a RISC with Carvana for the purchase of a vehicle at a time prior to November 21, 2022; b) had their vehicles repossessed by Defendants; c) were sent a NOI by Defendants; d) reinstated their accounts in a timely manner; and d) for whom Carvana transferred ownership and title to itself at a time prior to the expiration of the reinstatement grace period and/or failed to transfer title back to the person at the time of reinstatement and/or the retaking of possession of the vehicle by such person during the relevant time period and up through the date of class certification.
>
> **ITEMIZATION CLASS**: All natural persons who were: a) Pennsylvania residents at a time when they entered into a RISC with Carvana prior to November 21st, 2022; b) that included TNR fees in one lump sum at line 4c of the RISC or otherwise; c) who are not members of the Transit Charge Subclass in *Jennings v. Carvana*, C.A. No.5:21-cv-05400; c) during the time period and up through the date of class certification.

65. The identities of all class members are readily ascertainable from Carvana's and BCC's electronic records that track information about buyers, their sales transactions, their account histories and BCC's repossession activities. For example, BCC tracks the sending of its NOI letters in its consumer account records and codes the letters as an "NOI" letter.



Case ID: 260901593

66. Excluded from the Classes are all officers, members, partners, managers, directors, and employees of Carvana and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

67. There are questions of law and fact common to the NOI CLASS and NOI UCC NATIONAL CLASS, which common issues predominate over any issues involving only individual class members. These include:

a) Whether Plaintiffs and the Class financed the purchase of a motor vehicle for consumer use through Carvana by means of a RISC;
b) Whether Plaintiffs and the Class had their vehicles repossessed by the Defendants;
c) Whether Plaintiffs and the Class were sent a NOI by Defendants that failed to describe Carvana as the secured creditor;
d) Whether Plaintiffs and the Class had their vehicles sold or disposed of by Defendants post-repossession and sending of the NOI.

68. There are questions of law and fact common to the REINSTATEMENT CLASS, which common issues predominate over any issues involving only individual class members. These include:

a. Whether Plaintiffs and the Class financed the purchase of a motor vehicle for consumer use through Carvana by means of a RISC;
b. Whether Plaintiffs and the Class had their vehicles repossessed;
c. Whether Plaintiffs and the Class were sent an NOI letter that provided them with a grace period to redeem their vehicles and reinstate their account;
d. Whether Plaintiffs and the Class made payment to redeem their vehicle and reinstate their accounts in a timely manner;
e. Whether Carvana transferred title and ownership of the repossessed vehicle prior to the expiration of the grace period for redemption and reinstatement and failed to transfer title and ownership of the repossessed vehicle when Plaintiff and the Class retook possession of their vehicles.

69. There are questions of law and fact common to the ITEMIZATION CLASS, which common issues predominate over any issues involving only individual class members. These include:

a. Whether Plaintiffs and the Class financed the purchase of a motor vehicle for consumer use through Carvana by means of a RISC;

b. Whether the RISC itemized fees to public officials in the RISC.

70. The putative classes also meet the requirements of Rule 1708 relating to classes that seek monetary relief as the common issues identified above are also the predominant issues in this action.

71. The Plaintiffs' claims are typical of the class members, as all are based upon the same facts and legal theories.

72. The Plaintiffs will fairly and adequately protect the interests of the Class defined in this complaint. Class Counsel has been certified to serve as class counsel in over 90 class actions throughout the country.

73. Plaintiffs have also hired attorneys who meet the criteria of Rule 1709 as they can adequately represent the class since they are experienced attorneys with substantial class action experience. Plaintiff and counsel have adequate financial resources to assure that the class will not be harmed.

74. Based on the foregoing, the prospective class numbers are at least in the hundreds and are so numerous that joinder of all members would be impractical. The exact size of the proposed classes and the identity of the members thereof are readily ascertainable from Defendants' business records.

75. Statutory damages under both the UCC and CPL are derived from a simple, straightforward and uniform arithmetic calculation.

76. For all of the classes described above, the figures needed for the statutory damage calculation are plainly visible on and determinable from the face of the consumer's RISC.

## CAUSES OF ACTION

### Count I
### Uniform Commercial Code
### (On behalf of Plaintiffs Skinner and Tessler and the NOI PENNSYLVANIA CLASS, NOD UCC NATIONAL CLASS and REINSTATEMENT CLASS against both Defendants)

77. Plaintiffs incorporate the preceding paragraphs herein.

78. Article 9 of the Uniform Commercial Code ("UCC"), 13 Pa. C.S. § 9601, *et seq.,* governs the repossession of vehicles in Pennsylvania.

79. To protect consumers' valuable property interests in financed vehicles, the UCC also imposes strict and mandatory requirements on secured creditors following a repossession.

80. Under the UCC, 13 Pa. C.S. § 9610, "[E]very aspect of a disposition of collateral … must be commercially reasonable[.]" This requirement includes whether the decision to repossess is commercially reasonable.

81. Further, 13 Pa. C.S. § 1304 states: "[e]very contract or duty within [the Uniform Commercial Code] imposes an obligation of good faith in its performance and enforcement." 13 Pa. C.S. §1201(b)(20) defines good faith as honesty in fact and observance of reasonable commercial standards of fair dealing.

82. Article 9, 13 Pa. C.S.A. §9607, UCC, provides that "a secured party shall proceed in a commercially reasonable manner if the secured party … undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral."

83. Before a creditor may sell a repossessed vehicle, the UCC requires that it send the borrower "a reasonable authenticated notification of disposition." 13 Pa. C.S.A. § 9611.

84. Among other obligations, 13 Pa. C.S.A. §§ 9613 and 9614 specify the information that must be included in a post-repossession notice of disposition for it to comply with the law. 13 Pa. C.S.A. § 9613(a)(1)(i) provides, in pertinent part, that a notice of disposition must describe the



Case ID: 260901593

debtor and the *secured party* which are also required to be included in a notice of disposition for a consumer-goods transaction. 13 Pa. C.S.A. § 9614(1)(i) (emphasis added).

85. The NOI sent to Plaintiffs Skinner and Tessler and the putative class members set forth above purported to be a notice of disposition pursuant to section 9611 of the UCC.

86. The Skinner and Tessler NOIs were the same or were substantially similar to other notices of disposition sent to other consumers during the class periods.

87. The NOIs sent to Plaintiffs Skinner, Tessler, and the NOI CLASS failed to comply with the UCC and Pennsylvania UCC sections 9613 and 9614 in that they did not describe the secured party which was Carvana, not BCC.

88. In addition, as to Plaintiff Skinner and the REINSTATEMENT CLASS, Defendant Carvana acted in a commercially unreasonable manner, and further violated the UCC by its failure to keep its promise to Skinner to have her vehicle properly titled and registered in her name with the Commonwealth of Pennsylvania after reinstatement payments were made and in accordance with agreements and payment of fees in the RISC to public officials in connection with titling and registering the vehicle to Plaintiff

89. 13 Pa. C.S.A. § 9625(c)(2) provides for damages for a secured party's failure to follow the proper procedures upon repossession. The statute allows a consumer debtor such as Plaintiff (and the putative class) to recover minimum damages of not less than the credit service charge plus 10% of the principal amount of the obligation without evidence of harm.

90. As a direct and proximate result of the acts herein above alleged and Defendants' ongoing unlawful conduct, the Class Representatives and class members have been damaged and have suffered economic losses in an amount to be proven at trial.

91. The Class Representatives and class members are therefore entitled to damages, pursuant to 13 Pa. C.S.A. §9625, as well as injunctive relief.



Case ID: 260901593

**<u>Count II</u>**

**Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq*. ("UTPCPL")**
**(On behalf of all Plaintiffs and the ITEMIZATION Class)**

92. Plaintiffs incorporate the preceding paragraphs herein. This claim is brought on behalf of the Plaintiffs individually and on behalf of the Class.

93. The used motor vehicle sales practices described herein related to Defendant constitute trade and commerce under the UTPCPL, 73 P.S. §201-2(3). The UTPCPL, 73 P.S. §§201-2(4) prohibits unfair or deceptive trade practices in the sale of goods such as used motor vehicle sales as provided by Carvana and also prohibits unfair or deceptive trade practices in the sale or provision of such services as described in this action.

94. Plaintiffs and the Class purchased their vehicles for personal, family, and/or household purposes.

95. Under the Pa. Consumer Credit Code an installment sale contract shall contain the following:

> (1) The full name and address of all the parties to the contract.
> (2) The date that the buyer signed the contract.
> (3) A description of the motor vehicle sold, which shall be sufficient for accurate identification.
> (4) The notice under section 6223 (relating to notice).
> (5) The following items in writing and in a clear and conspicuous manner, with each component of each subparagraph listed separately:…
>
> Other charges necessary or incidental to the sale or financing of a motor vehicle which the seller contracts to retain, receive or pay on behalf of the buyer;

12 Pa. C.S.A. § 6222.

> Costs and charges under sections 6222 (relating to contents) and 6242 (relating to other costs included in amount financed) *shall be separately itemized* in an installment sale contract as to their nature and amounts.

12 Pa. C.S.A. § 6224 (emphasis added).

96. Carvana by its acts or omissions described herein, "engaged in unfair methods of competition" and "unfair or deceptive acts or practices" under 73 Pa. Stat. § 201-2(4) by:

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

- Engaging in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

73 Pa. Stat. § 201-2(4)(v) and (xxi).

97. These violations included:

- Failing to itemize amounts paid to public officials on standard Pennsylvania RISCs in violation of the CCC as set forth herein.

- Issuing temporary registrations from states outside of Pennsylvania without the legal right to do so.

- Failing to timely transfer title and registration to a vehicle after reinstatement of the account following repossession.

98. Because of Defendants' acts and omissions described herein, Plaintiffs and Class members suffered an ascertainable loss of money including but not limited to payment of the title/registration fees, payment of loan payments for vehicles they could not lawfully drive, payment of costs for alternate transportation, payment of charges paid to public officials that Carvana unlawfully charged and collected.

99. As a licensed retail installment seller Carvana knew or should have known the laws governing the transactions prior to making the sales to Plaintiffs and the Title and Repossession Class members.

100. Carvana's routine business practices subject to this claim disregarded the laws governing the transaction.

101. No reasonable person would assume that a licensed installment seller like Carvana or its assignees like BCC would violate the laws governing its activities. Plaintiffs and the Class

members justifiably relied on Carvana and BCC's acts and omissions by believing the fees charged to them were lawful and bona fide and they paid the fees as further evidence of that reasonable reliance.

102. Plaintiffs and the Class members justifiably relied on BCC's acts and omissions by paying to BCC the monthly payments charged to them in the RISC as further evidence of that reasonable reliance.

103. By the aforesaid misrepresentations and others referenced herein, these misrepresentations and omissions had the capacity, tendency, or effect of deceiving or misleading the plaintiff to purchase the subject vehicle in violation of the UTPCPL by, including but not limited to causing a likelihood of confusion or misunderstanding as to restoration of title after reinstatement following repossession and the propriety of unitemized title and registration fees in the RISC in violation 73 P.S. § 201-1(4)(xxi).

104. By their respective deceptive conduct towards Plaintiffs as described above, Carvana and BCC are liable to Plaintiffs and the Class members for damages they incurred.

**Count III**
**Declaratory Judgment Under 28 U.S.C. § 2201**
**(On behalf of Plaintiff Skinner and the REINSTATEMENT CLASS)**

105. Plaintiffs incorporate the previous paragraphs by reference.

106. Plaintiff Skinner and an unknown number of putative class members whose vehicles were repossessed timely reinstated or redeemed their accounts within the time period permitted by the UCC and Defendants' NOI letters. Notwithstanding their timely reinstatement, Carvana transferred title and ownership of the vehicle back to itself, and has not transferred it back to Plaintiff Skinner after many months following her reinstatement of her account.

107. As a result, Defendants have deprived Plaintiff of her lawful ownership of her vehicle in such a manner and for such a time that Plaintiff cannot retrieve it from the Philadelphia

Parking Authority, have deprived her of use of the vehicle on an ongoing daily basis resulting in her suffering numerous out-of-pocket damages for alternative transportation and her being denied the use of her property.

108. Plaintiff Skinner and numerous other REINSATEMENT class members are subject to actual, imminent and ongoing harm absent a declaration from the court that they are the lawful owners of their vehicles.

109. The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this Court will determine the rights and interests of the parties to the RISCs.

110. Pursuant to 28 U.S.C. §2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the ongoing attempted imposition of the interest and fees.

111. Accordingly, Plaintiff Skinner on behalf of herself and the REINSTATEMENT CLASS seeks a declaratory judgment that they have lawful ownership and title to their vehicles, and that Defendant Carvana's transfer of and withholding of title from them was unlawful.

**Count IV- Breach of Contract**
**(On behalf of each Plaintiff Individually)**

112. Plaintiffs incorporate the preceding paragraphs herein. This claim is brought on behalf of the Plaintiffs individually.

113. As described herein, Plaintiffs entered into contracts with Carvana.

114. Every contract imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract.

115. An express and/or implied term of the contracts between the Itemization Class members is that Carvana agreed that the sale was being conducted in compliance with all laws and regulations governing such sales.

116. By failing to timely and properly transfer title and register their vehicles despite the fees it charged and collected from the Plaintiffs, Defendant Carvana failed to conduct the sale of the vehicles to the Plaintiffs and class members in compliance with all laws and regulations governing such sales.

117. By its aforesaid conduct, Defendant Carvana breached the terms of the contracts it had with the Plaintiffs, including any implied or express warranties therein, and acted in bad faith.

118. In addition, Carvana breached its contract with Plaintiff Skinner by retitling her vehicle to itself and failing to transfer title and ownership back to her when she reinstated her account.

119. Defendant Carvana has wrongfully, recklessly, and/or intentionally breached the duty of good faith by denying Plaintiffs the benefits to which they bargained and paid for in their sales contracts.

120. Defendant Carvana's breaches of the covenant of good faith and fair dealing have proximately and directly caused damages to Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants as follows:

1. For an order certifying the Class and Subclasses under Pennsylvania Rules of Civil Procedure 1702 naming Plaintiffs as class representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

2. For an order finding in favor of Plaintiff and the Class and Subclasses on all counts asserted herein;

3. For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

4. For prejudgment interest on all amounts awarded;



Case ID: 260901593

5. For an order of restitution and all other forms of equitable monetary relief;

6. For injunctive and/or declaratory relief as pleaded or as the Court may deem proper;

7. For an order awarding Plaintiff and the Class and Subclasses' reasonable attorneys' fees and expenses and costs of suit; and

8. All other relief to which Plaintiff and members of the Class and Subclasses may be entitled by law or in equity.

Dated: September 11, 2026

/s/ *James A. Francis*
James A. Francis
Lauren KW Brennan
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Robert P. Cocco
**ROBERT P. COCCO, P.C.**
Pa ID No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200
bob.cocco@phillyconsumerlaw.com

*Attorneys for Plaintiff*

Filed and Attested by the
Office of Judicial Records
11 SEP 2026 01:10 pm
I. LOWELL

# EXHIBIT A

DocuSign Envelope ID: FABB6421-A9AB-473E-886E-D0BE716FA1D4

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

PA-102 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| CARVANA, LLC<br>600 S 94th AVE<br>TOLLESON, AZ 85353-2820 | Ariann M Skinner<br>1361 S 54th St<br>Philadelphia PA 19143-4801 | No. 2001784858<br>Date 07/28/2022 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $ 3,400.00 |
| 20.969 % | $ 11,653.81 | $ 15,988.40 | $ 27,642.21 | $ 31,042.21 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 68 | $ 401.00 | Monthly Beginning 08/28/22 |
| 1 | $ 374.21 | 04/28/28 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not received in full within 10 days after it is due, you will pay a late charge. The charge will be 2% of the part of the payment that is late. If the Vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, breaking the terms of this Contract, any required repayment before the scheduled date, and prepayment refunds and penalties.

**Buyer Restrictions.** If you do not meet this Contract's obligations, you may lose the property that you bought in this sale.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2017 | Kia | Optima | Sedan | Redacted 155648 | 93680 |

☐ New
☒ Used
☐ Demo

Other:
N/A

## Description of Trade-In

N/A

N/A

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: N/A N/A . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the Amount Financed and Finance Charge according to the payment schedule as provided in the *Truth-in-Lending Disclosure* above. The Finance Charge is figured at the Annual Percentage Rate on the unpaid part of the Amount Financed until paid in full. Finance Charges accrue on a daily basis. Each payment will be applied, in any order that we determine, to earned and unpaid Finance Charges, to the unpaid part of the Amount Financed, and to other charges and amounts you owe under this Contract. You agree to pay late charges as provided in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to this Contract's terms.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

**Down Payment.** You also agree to pay or apply to the Total Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

DS
AS



COPY - VIEW

DocuSign Envelope ID: FABB6421-A9AB-473E-886E-D0BE716FA1D4

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## Itemization of Amount Financed

| | | |
|---|---|---|
| 1a. | Cash price of motor vehicle | $ 16,590.00 |
| 1b. | Government taxes | $ 1,366.40 |
| 1c. | Accessories and installation | $ 0.00 |
| 1d. | Delivery charge | $ 490.00 |
| 1e. | N/A | $ N/A |
| 1f. | N/A | $ N/A |
| 1g. | N/A | $ N/A |
| 1h. | N/A | $ N/A |
| 1. | **Total Cash Price of Motor Vehicle** (1a thru 1h) | $ 18,446.40 |
| 2a. | Trade-in allowance | $ N/A |
| 2b. | Less: Amount owing paid to: N/A | $ 0.00 |
| 2c. | **Net Trade-In** (2a minus 2b) | $ N/A |
| 2d. | Plus cash payment | $ 3,400.00 |
| 2e. | Plus manufacturer's rebate | $ 0.00 |
| 2f. | Plus (Other) N/A | $ N/A |
| 2. | **Total Down Payment** (if negative, enter $0 and see 4a.) | $ 3,400.00 |
| 3. | **Unpaid Cash Price Balance** (1 minus 2) | $ 15,046.40 |
| 4a. | Prior credit or lease balance payment on Trade-in (paid to same as 2b.) | $ 0.00 |
| 4b. | Insurance premiums paid to insurance company(ies) | $ 0.00 |
| 4c. | Paid to Public Officials (incl. filing fees) | $ 147.00 |
| 4d. | (Optional) Service Contract paid to: N/A | $ N/A |
| 4e. | (Optional) Service Contract paid to: N/A | $ 0.00 |
| 4f. | Optional Gap Waiver (Debt Cancellation) paid to Seller | $ 795.00 |
| 4g. | N/A pd to N/A | $ N/A |
| 4h. | N/A pd to N/A | $ N/A |
| 4i. | N/A pd to N/A | $ N/A |
| 4j. | N/A pd to N/A | $ N/A |
| 4k. | N/A pd to N/A | $ N/A |
| 4l. | N/A pd to N/A | $ N/A |
| 4m. | N/A pd to N/A | $ N/A |
| 4n. | N/A pd to N/A | $ N/A |
| 4o. | N/A pd to N/A | $ N/A |
| 4p. | N/A pd to N/A | $ N/A |
| 4. | **Total Other Charges and Amounts Paid to Others on Your Behalf** (4a thru 4p) | $ 942.00 |
| 5. | **Amount Financed** (3 + 4) | $ 15,988.40 |
| 6. | **Finance Charge** | $ 11,653.81 |
| 7. | **Time Balance** (5 + 6) | $ 27,642.21 |

**We may retain or receive a portion of any amount paid to others.**

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and are not a factor in the credit decision. In general, if you die, credit life insurance pays the unpaid part of the amount financed, assuming you made all payments on time. In general, credit disability insurance pays the scheduled payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. You will not receive credit life insurance and credit disability insurance unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☐ None

Premium $ N/A Term N/A

Insured N/A

**Credit Disability**

☐ Single ☐ Joint ☐ None

Premium $ N/A Term N/A

Insured N/A

You want the credit insurance coverages indicated.

N/A N/A
By: DOB

N/A N/A
By: DOB

N/A N/A
By: DOB

**Property Insurance.** In general, property insurance pays for the repair or replacement of the Property if it is damaged, destroyed, or stolen. See the policies or certificates for coverage limits and other terms and conditions. You must insure the Property securing this Contract. You may provide the insurance through existing policies. You may also provide the insurance by purchasing it through any insurance company allowed by law to do business in Pennsylvania or in the state in which the Vehicle is registered and titled. The deductible amount for the insurance may not exceed $ 1,000.00. If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This property insurance premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A
☐ $ N/A Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A
☐ N/A $ N/A

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

The property insurance must protect against loss and physical damage. You must name us as beneficiary on the insurance policy. We may require additional security before we allow you to use insurance proceeds to repair or replace the Property. You will pay all amounts that insurance does not cover.

If you fail to obtain or keep insurance or to name us as beneficiary, we may obtain insurance to protect your interest and our interest in the Property. We will add the cost of insurance to the amount you owe us. Any amount we pay for insurance is due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

COPY VIEW

DS
AS



Case ID: 260901593

DocuSign Envelope ID: FABB6421-A9AB-473E-886E-D0BE716FA1D4

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**

Term: N/A
Price: $ N/A
Coverage: N/A

☒ **Optional Gap Waiver (Debt Cancellation)**

Term: 69 Months
Price: $ 795.00
Coverage: Gap Coverage

☐ **Cosmetic Protection**

Term: N/A
Price: $ N/A
Coverage: N/A

DocuSigned by:
Ariann Skinner
19341BB4CE5C45A...

By: Ariann M 07/28/2022 **Date**

N/A N/A

**By:** **Date**

N/A N/A

**By:** **Date**

## Additional Terms of the Sales Agreement

**Definitions.** "*Contract*" refers to this Retail Installment Contract and Security Agreement. The pronouns "*you*" and "*your*" refer to each Buyer signing this Contract, and any guarantors jointly and individually. The pronouns "*we*", "*us*" and "*our*" refer to the Seller and any entity to which it may transfer this Contract. "*Vehicle*" means each motor vehicle described in the *Description of Property* section. "*Property*" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections. *"Heavy commercial motor vehicle"* means a new or used motor vehicle (other than a recreational vehicle) that is a truck or truck tractor having a manufacturer's gross vehicular weight of 13,000 pounds or more, or a semitrailer or trailer designed for use in combination with a truck or truck tractor.

**Purchase of Property.** You agree to purchase the motor vehicle (Vehicle) and services described in the Description of Property section from Seller. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. You agree to purchase the Vehicle from us on the terms of this Contract and security agreement (Contract). You understand that we are selling you the Vehicle in its present condition.

**Total Sale Price.** We gave you the opportunity to purchase the Vehicle and described services for the Total Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over a period of time. You are purchasing the items over a period of time.

The **Total Sale Price** shown in the **Truth-in-Lending Disclosure** assumes that you will make all payments as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early. This may cause your final payment to be more or less than the scheduled amount, or, at our option, we may require more or fewer payments of the scheduled amount with an adjusted final payment.

We charge and collect finance charges. These charges are not more than state or federal law allows. If you pay a finance charge or fee that is more than state or federal law allows, we will apply the charge or fee first to reduce what you owe and refund any excess to you.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Governing Law and Interpretation.** This Contract is governed by the law of Pennsylvania and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

Any provision that appoints us as an agent is not subject to the provisions of 20 Pa.C.S.A. Section 5601 *et seq.* (Chapter 56; Decedents, Estates and Fiduciaries Code) [illegible]e, by exercising any of our rights under this Contract, do so for the sole benefit of us.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Breaking the Terms of this Contract.** You agree that the following are additional terms of this Contract. You will have broken the terms of this Contract if you fail to perform any obligation that you have undertaken in this Contract, except as prohibited by law.

If you break any of the terms of this Contract, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. In addition, you agree to pay reasonable attorneys' fees to the extent permitted by law if the Property is taken through legal action.

If there is more than one of you and any one of you breaks any agreement made in this Contract, we may exercise our rights against each of you or all of you.

**Seller's Rights.** If you break any of the terms of this Contract, we have all of the remedies provided by law and this Contract, subject to any opportunity to cure we may offer and you may exercise. Those remedies include:

- We may pay taxes, fees, expenses, or charges on the Property or make repairs to the Property if you have not done so. We are not required to do so. We will add any amount we pay to the amount you owe us, as allowed by law. This amount is due immediately. This amount will earn finance charges from the date we paid it at the rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take back the Property by lawful means. In taking the Property, we may not unlawfully enter onto your premises or cause a public disturbance.
- We may sell the Property. We may apply amounts we receive as provided by law to our reasonable expenses and then to your obligations.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

We may take any or all of the actions described above. Our decision not to take any of the actions does not mean that we have lost the right to take any of the actions in the future.

In addition, we may require you to pay us immediately, the remaining balance of the amount financed, finance charges and all other agreed charges if you do any of the following:

- You fail to pay one or more installment payments under this Contract.
- You fail to pay taxes levied against the Property.
- You fail to furnish proof of payment of taxes levied against the Property.

COPY VIEW

DocuSign Envelope ID: FABB6421-A9AB-473E-886E-D0BE716FA1D4

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

- You use the Property for illegal purposes.
- You file for bankruptcy.
- You intentionally provide fraudulent and misleading information on a credit application.

We will mail to your last known address any required notice of intended sale or transfer of the Property. You agree that notice is reasonable if mailed to your last known address, as reflected in our records. You agree that notice mailed 15 days before the intended sale or transfer (or such other period of time required by law) is reasonable.

You agree that we may take personal property left in or on the Property subject to your right to recover the personal property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Buyer's Rights and Duties.** If we have taken back the Property, we may, at our option, return the Property to you if you pay all past due installments, late charges and our costs in retaking the Property, to the extent allowed by law. Your opportunity to get back the Property ends when we sell the Property.

You agree to pay for the costs of a lawsuit allowed by law if we take the Property through legal action. If we retake the Property other than through a lawsuit, you must pay the expenses for taking, repairing, and storing the Property as allowed by law. We may only collect these expenses from you if more than 15 days passed from the day you broke the terms of this Contract to the day we took the Property.

**Statement of Account. At your request, we will provide you with a statement of your account showing information about your payment history, including the dates and amounts of payments you have made and any other credits and charges to your account. It will also provide information about future payments and any other information required by law. We will provide you with one statement of account free of charge. We may charge you a reasonable fee as allowed by law for any additional statements that you request. You can request, and we will provide, a statement of account at any time until one year after this Contract ends.**

**Each and Every Buyer Responsible.** Each of you who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You are responsible for paying amounts owed under this Contract even if another of you has signed this Contract.
- We may hold any of you responsible for paying this Contract, even if we choose to give up our right to hold any other of you responsible.
- We may give up our interest in the Property and each of you is still responsible for paying this Contract.
- If we give up any of our rights, it will not affect your responsibility to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your responsibility to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

**Additional Rights. If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

## *Security Agreement*

**Security.** You give us a security interest in the Vehicle. You also give us a security interest in all attachments, accessories, and equipment installed or placed in or on the Vehicle. We refer to the Vehicle and any items installed or placed in or on the Vehicle as Property. You also give us a security interest in the proceeds of the Property. Our interest will not extend to consumer goods unless you acquire rights to the goods within 10 days after we enter into this Contract or the goods are installed in or affixed to the Vehicle. You assign and give a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Buyer's Responsibilities Towards Property.** You agree to the following:

- You will defend our security interest in the Property against anyone who claims to have an interest in the Property. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else. Our claim to the Property comes ahead of the claim of any of your other creditors. You agree to sign any additional documents to provide us with any additional information we may require to protect our security interest in the Property.
- You will keep the Property in your possession and in good condition. You will only use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not put the Property up for sale without written permission from us. You will not transfer any rights in the Property without first getting our written permission.
- You will pay taxes, fees and expenses on the Property when due.
- You will notify us of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. We may lawfully enter and inspect the Property.

**Insurance.** You agree to buy insurance on the Property against risks and for the amounts we reasonably require. In addition:

- You will name us as loss payee on any such policy.
- We may require added security on this Contract if we permit any insurance proceeds to be used to repair or replace the Property.
- If the insurance proceeds do not cover the amounts you still owe us, you will pay the difference.
- You will keep the insurance until all debts secured by this Contract are paid.

If you do not buy, maintain, and arrange to have us named as loss payee, as agreed above, you understand and agree:

- We may purchase insurance to protect your and our interest in the Property.
- The insurance we buy may be from an agent or company you may not choose.
- The insurance will not cover your equity in the Property.
- The premium we pay may be substantially higher than the premium you might be required to pay for the insurance you have agreed to buy on this Contract.

**Optional Gap Waiver (Debt Cancellation).** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Optional Gap Waiver (Debt Cancellation) to cover the gap liability, subject to any conditions and exclusions in the Optional Gap Waiver (Debt Cancellation) agreements.

## *Notices*

**NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Si compra un vehículo usado:** La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

DS
RS

DocuSign Envelope ID: FABB6421-A9AB-473E-886E-D0BE716FA1D4

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**Summary Notice - Prepayment, Rebate, Reinstatement and Statement of Account. You may prepay all or part of the amount you owe under this Contract at any time without penalty. If you prepay, you will only pay finance charges that are earned but unpaid and all other amounts due up to the date of prepayment. Payments we receive for any unearned finance charges will be rebated to you. If you break the terms of this Contract we may take back the vehicle (Property). We may, at our option, allow you to get the Property back before we sell it and continue under this Contract (reinstate). If we allow you to reinstate this Contract, you must pay us all past due amounts, late charges and any costs we incurred in retaking the vehicle to the extent allowed by law. At your request, we will provide you with a statement of account with important information about your payment history and amounts owing.**

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

You authorize us to obtain information about you and the Property you are buying from the state motor vehicle department or other motor vehicle registration authorities.

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

DocuSigned by: Ariann Skinner 19341BB4CE5C45A... 07/28/2022

By: Ariann M Skinner Date

N/A N/A

By: Date

[signature] 07/28/2022

By: CARVANA, LLC Date

By signing below, you agree to the terms of this Contract.

**NOTICE TO BUYER. Do not sign this contract in blank. You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights. Any holder of this consumer credit contract is subject to all claims and defenses which the buyer could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the buyer shall not exceed amounts paid by the buyer hereunder.**

**Buyer**

DocuSigned by: Ariann Skinner 19341BB4CE5C45A... 07/28/2022

By: Ariann M Skinner Date

N/A N/A

By: Date

N/A N/A

By: Date

**Seller**

[signature] 07/28/2022

By: CARVANA, LLC Date

**By signing below, you acknowledge that you received a completely filled-in copy of this Contract and that you had the opportunity to read and review the Contract before you signed it.**

**Buyer**

DocuSigned by: Ariann Skinner 19341BB4CE5C45A... 07/28/2022

By: Ariann M Skinner Date

N/A N/A

By: Date

N/A N/A

By: Date

COPY VIEW

DocuSign Envelope ID: FABB6421-A9AB-473E-886E-D0BE716FA1D4

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**Transfer.** This Contract and Security Agreement is transferred to N/A

_______________________________________________,

the Transferee, phone N/A. This transfer is made under the terms of a separate agreement made between the Seller and Transferee.

☐ This Transfer is made ☐ with legal liability. ☐ without legal liability.

**Seller**

N/A

**By:** **Date**

COPY VIEW

Filed and Attested by the
Office of Judicial Records
11 SEP 2026 01:10 pm
I. LOWELL

# EXHIBIT B

Bridgecrest
PO Box 29018
Phoenix, AZ 85038
800-965-8029

USPS CERTIFIED MAIL™

9207 1901 0802 0007 6197 87

01-28-2026

S1-26 - 1

ARIANN SKINNER
1361 S 54TH ST
PHILADELPHIA PA 19143-4801

## NOTICE OF DISPOSITION AND OUR PLAN TO SELL PROPERTY

RE: Credit Transaction
Account Number: 200178485801
Vehicle Description: 2017 KIA Optima
VIN: [redacted] 155648

We have your property described above, because you broke promises in our agreement. The motor vehicle is being stored at International Recovery Systems 2700 STATE RD LOT D, BENSALEM, PA 19020.

We will sell the vehicle described above at private sale sometime after 2026-02-13. A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back within 15 days from the date of this notice or at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. As of the date of this notice, you must pay the following amounts to redeem the motor vehicle:

| | |
|---|---|
| Principal Balance: | $8593.82 |
| Accrued Interest: | $543.08 |
| Total Late Charges: | $15.00 |
| Retaking Charges: | $600.00 |
| Repairing Charges: | $0.00 |
| Storage Charges: | $0.00 |
| Other Amounts Owed Under the Contract: | $15.00 |
| Credit for Unearned Finance Charge: | $0.00 |
| **TOTAL DUE TO REDEEM** | $9766.90 |

These amounts reflect what you must pay to redeem the motor vehicle as of the date of this notice. This amount may increase the longer you wait. To learn the exact amount you must pay to redeem the motor vehicle, call Kim Newton or the Reinstatement and Redemption Department at 800-967-9712 or write us at PO Box 29018 Phoenix, AZ 85038.

To redeem the motor vehicle, you must submit payment made payable to Bridgecrest in the amount of the TOTAL DUE TO REDEEM listed above. Please send your payment to Kim Newton or the Reinstatement and Redemption Department at Bridgecrest at PO Box 29018 Phoenix, AZ 85038 or call us at 800-967-9712 to discuss other payment options.

**IMPORTANT BANKRUPTCY NOTICE:** If either you, your spouse, or anyone who is liable for this debt has filed bankruptcy, please contact us immediately at the number listed above to provide information regarding the bankruptcy case(s). If either you, your spouse, or anyone who is liable for this debt has filed for bankruptcy, we may be stayed from selling the repossessed collateral and from attempting to collect any debt from you. If you receive a bankruptcy discharge of your debts in the bankruptcy case, this notice is not an attempt to collect a debt and is for informational purposes only. We may, however, seek to enforce any existing security interests and liens against the repossessed collateral and other property that serves as collateral. We will continue to proceed in accordance with all applicable laws and agreements. This Notice of Disposition is for the purpose of complying with Article 9 of the Uniform Commercial Code and all applicable laws and agreements.

S1

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

We would also like to give you the opportunity to reinstate your contract and get your vehicle back within 15 days from the date of this notice by paying the amount due at the time of the repossession (excluding any amount that would not be due except for an acceleration provision) and the actual and reasonable expenses incurred as a result of the retaking, repairing, and storing of the property. As of the date of this notice, the amount you must pay to reinstate your contract is as follows:

| | |
|---|---|
| Past Due Payments: | $1218.00 |
| Unpaid Late Charges: | $15.00 |
| Retaking Charges: | $600.00 |
| Repairing Charges: | $0.00 |
| Storage Charges: | $0.00 |
| **TOTAL DUE TO REINSTATE:** | $1833.00 |

These amounts reflect what you must pay to reinstate your contract and get your vehicle back as of the date of this notice. This amount may increase the longer you wait. To learn the exact amount you must pay to reinstate our agreement and any other actions you must take to cure other defaults under the contract, call Kim Newton or the Reinstatement and Redemption Department at 800-967-9712 or write us at PO Box 29018 Phoenix, AZ 85038.

To reinstate the contract, you must submit payment made payable to Bridgecrest in the amount of the TOTAL DUE TO REINSTATE listed above. Please send your payment to Kim Newton or the Reinstatement and Redemption Department at Bridgecrest at PO Box 29018 Phoenix, AZ 85038 or call us at 800-967-9712 to discuss other payment options.

Any personal property left in the repossessed vehicle will be held for thirty (30) days from the date of this notice. The personal property may be reclaimed within this thirty (30) day time period. Thereafter the property may be disposed of in the same manner as the motor vehicle and other collateral.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call Kim Newton or the Reinstatement and Redemption Department at Bridgecrest at 800-967-9712 or write us at PO Box 29018 Phoenix, AZ 85038 and request a written explanation. We will charge you $0.00 for the explanation if we sent you another written explanation of the amount you owe us within the last six months.

If you need more information about the sale call us at 800-967-9712 or write us at PO Box 29018 Phoenix, AZ 85038.

We are sending this notice to the following other people who have an interest in the vehicle described above or who owe money under your agreement:

None

Sincerely,

Bridgecrest

**IMPORTANT BANKRUPTCY NOTICE:** If either you, your spouse, or anyone who is liable for this debt has filed bankruptcy, please contact us immediately at the number listed above to provide information regarding the bankruptcy case(s). If either you, your spouse, or anyone who is liable for this debt has filed for bankruptcy, we may be stayed from selling the repossessed collateral and from attempting to collect any debt from you. If you receive a bankruptcy discharge of your debts in the bankruptcy case, this notice is not an attempt to collect a debt and is for informational purposes only. We may, however, seek to enforce any existing security interests and liens against the repossessed collateral and other property that serves as collateral. We will continue to proceed in accordance with all applicable laws and agreements. This Notice of Disposition is for the purpose of complying with Article 9 of the Uniform Commercial Code and all applicable laws and agreements.

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Filed and Attested by the
Office of Judicial Records
11 SEP 2026 01:30 pm
I. LOWELL

# EXHIBIT C

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $ 0.00 |
| 12.619 % | $ 8,495.05 | $ 19,741.30 | $ 28,236.35 | $ 28,236.35 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 393.00 | monthly beginning 07/19/20 |
| 1 | $ 333.35 | 06/19/26 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not received in full within 10 days after it is due, you will pay a late charge. The charge will be 2% of the part of the payment that is late. If the Vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, breaking the terms of this Contract, any required repayment before the scheduled date, and prepayment refunds and penalties.

**Buyer Restrictions.** If you do not meet this Contract's obligations, you may lose the property that you bought in this sale.

COPY VIEW

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2017 | Hyundai | Tucson | Sport Utility | [redacted] 436213 | 19810 |

☐ New
☒ Used
☐ Demo

Other:
N/A

## Description of Trade-In

N/A N/A N/A
N/A
N/A N/A N/A
N/A

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: N/A N/A. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the Amount Financed and Finance Charge according to the payment schedule as provided in the *Truth-in-Lending Disclosure* above. The Finance Charge is figured at the Annual Percentage Rate on the unpaid part of the Amount Financed until paid in full. Finance Charges accrue on a daily basis. Each payment will be applied, in any order that we determine, to earned and unpaid Finance Charges, to the unpaid part of the Amount Financed, and to other charges and amounts you owe under this Contract. You agree to pay late charges as provided in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to this Contract's terms.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

**Down Payment.** You also agree to pay or apply to the Total Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.



DocuSign Envelope ID: 3840CD69-B3ED-461C-81CE-6B42381FEFF5

THIS IS A COPY
This is a copy view of the Authoritative Copy by the designated custodian

## Itemization of Amount Financed

| | | |
|---|---|---|
| 1a. | Cash price of motor vehicle | $ 16,590.00 |
| 1b. | Government taxes | $ 1,161.30 |
| 1c. | Accessories and installation | $ 0.00 |
| 1d. | Delivery charge | $ N/A |

## Insurance Disclosures

Case ID: 260901593

**Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and are not a factor in the credit decision. In general, if you die, credit life insurance pays the unpaid part of the amount financed, assuming you made all payments on time. In general, credit disability insurance pays the scheduled payments due under this Contract while you are disabled. This insurance does not cover any increase in your

## Itemization of Amount Financed

| | | |
|---|---|---|
| 1a. | Cash price of motor vehicle | $ 16,590.00 |
| 1b. | Government taxes | $ 1,161.30 |
| 1c. | Accessories and installation | $ 0.00 |
| 1d. | Delivery charge | $ N/A |
| 1e. | N/A | $ N/A |
| 1f. | N/A | $ N/A |
| 1g. | N/A | $ N/A |
| 1h. | N/A | $ N/A |
| 1. | **Total Cash Price of Motor Vehicle** (1a thru 1h) | $ 17,751.30 |
| 2a. | Trade-in allowance | $ 0.00 |
| 2b. | Less: Amount owing paid to: N/A | $ 0.00 |
| 2c. | **Net Trade-In** (2a minus 2b) | $ 0.00 |
| 2d. | Plus cash payment | $ 0.00 |
| 2e. | Plus manufacturer's rebate | $ 0.00 |
| 2f. | Plus (Other) N/A | $ N/A |
| 2. | **Total Down Payment** (if negative, enter $0 and see 4a.) | $ 0.00 |
| 3. | **Unpaid Cash Price Balance** (1 minus 2) | $ 17,751.30 |
| 4a. | Prior credit or lease balance payment on Trade-in (paid to same as 2b.) | $ 0.00 |
| 4b. | Insurance premiums paid to insurance company(ies) | $ 0.00 |
| 4c. | Paid to Public Officials (incl. filing fees) | $ 140.00 |
| 4d. | (Optional) Service Contract paid to: Carvana for Vehicle Protection | $ 1,850.00 |
| 4e. | (Optional) Service Contract paid to: N/A | $ 0.00 |
| 4f. | Optional Gap Waiver (Debt Cancellation) paid to Seller | $ N/A |
| 4g. | N/A pd to N/A | $ N/A |
| 4h. | N/A pd to N/A | $ N/A |
| 4i. | N/A pd to N/A | $ N/A |
| 4j. | N/A pd to N/A | $ N/A |
| 4k. | N/A pd to N/A | $ N/A |
| 4l. | N/A pd to N/A | $ N/A |
| 4m. | N/A pd to N/A | $ N/A |
| 4n. | N/A pd to N/A | $ N/A |
| 4o. | N/A pd to N/A | $ N/A |
| 4p. | N/A pd to N/A | $ N/A |
| 4. | **Total Other Charges and Amounts Paid to Others on Your Behalf** (4a thru 4p) | $ 1,990.00 |
| 5. | **Amount Financed** (3+4) | $ 19,741.30 |
| 6. | **Finance Charge** | $ 8,495.05 |
| 7. | **Time Balance** (5+6) | $ 28,236.35 |

**We may retain or receive a portion of any amount paid to others.**

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and are not a factor in the credit decision. In general, if you die, credit life insurance pays the unpaid part of the amount financed, assuming you made all payments on time. In general, credit disability insurance pays the scheduled payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. You will not receive credit life insurance and credit disability insurance unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☐ None

Premium $ N/A Term N/A

Insured N/A

**Credit Disability**

☐ Single ☐ Joint ☐ None

Premium $ N/A Term N/A

Insured N/A

You want the credit insurance coverages indicated.

N/A N/A

**By:** **DOB**

N/A N/A

**By:** **DOB**

N/A N/A

**By:** **DOB**

**Property Insurance.** In general, property insurance pays for the repair or replacement of the Property if it is damaged, destroyed, or stolen. See the policies or certificates for coverage limits and other terms and conditions. You must insure the Property securing this Contract. You may provide the insurance through existing policies. You may also provide the insurance by purchasing it through any insurance company allowed by law to do business in Pennsylvania or in the state in which the Vehicle is registered and titled. The deductible amount for the insurance may not exceed $ 1,000.00. If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This property insurance premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A

☐ $ N/A Deductible, Comprehensive $ N/A

☐ Fire-Theft and Combined Additional Cov. $ N/A

☐ N/A $ N/A

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

The property insurance must protect against loss and physical damage. You must name us as beneficiary on the insurance policy. We may require additional security before we allow you to use insurance proceeds to repair or replace the Property. You will pay all amounts that insurance does not cover.

If you fail to obtain or keep insurance or to name us as beneficiary, we may obtain insurance to protect your interest and our interest in the Property. We will add the cost of insurance to the amount you owe us. Any amount we pay for insurance is due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

COPY VIEW

Filed and Attested by the
Office of Judicial Records
11 SEP 2026 01:30 pm
I. LOWELL

# EXHIBIT D

DocuSign Envelope ID: 8D21FE21-8BFC-47FF-AE1E-6112C2C0DC1A
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

PA-102 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| CARVANA, LLC<br>1043 N FRONT STREET<br>PHILADELPHIA, PA 19123-1704 | Lena Ross<br>1507 Federal St<br>Philadelphia PA 19146-3124 | No. 2001169597<br>Date 11/04/2021 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $ 600.00 |
| 20.090 % | $ 11,453.85 | $ 15,763.20 | $ 27,217.05 | $ 27,817.05 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 379.00 | Monthly Beginning 12/05/21 |
| 1 | $ 308.05 | 11/05/27 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not received in full within 10 days after it is due, you will pay a late charge. The charge will be 2% of the part of the payment that is late. If the Vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, breaking the terms of this Contract, any required repayment before the scheduled date, and prepayment refunds and penalties.

**Buyer Restrictions.** If you do not meet this Contract's obligations, you may lose the property that you bought in this sale.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2015 | Kia | Forte | Sedan | [redacted]406480 | 73178 |

☐ New
☒ Used
☐ Demo

Other: N/A

## Description of Trade-In

N/A

N/A

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: N/A N/A. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the Amount Financed and Finance Charge according to the payment schedule as provided in the *Truth-in-Lending Disclosure* above. The Finance Charge is figured at the Annual Percentage Rate on the unpaid part of the Amount Financed until paid in full. Finance Charges accrue on a daily basis. Each payment will be applied, in any order that we determine, to earned and unpaid Finance Charges, to the unpaid part of the Amount Financed, and to other charges and amounts you owe under this Contract. You agree to pay late charges as provided in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to this Contract's terms.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

**Down Payment.** You also agree to pay or apply to the Total Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.



COPY VIEW

DocuSign Envelope ID: 8D21FE21-8BFC-47FF-ABTE-6F2C2C0D30A This is a copy view of the Authoritative Copy held by the designated custodian

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| 1a. | Cash price of motor vehicle | $ | 13,990.00 |
| 1b. | Government taxes | $ | 1,201.20 |
| 1c. | Accessories and installation | $ | 0.00 |
| 1d. | Delivery charge | $ | N/A |
| 1e. | Transit charge | $ | N/A |
| 1f. | N/A | $ | N/A |
| 1g. | N/A | $ | N/A |
| 1h. | N/A | $ | N/A |
| 1. | **Total Cash Price of Motor Vehicle** (1a thru 1h) | $ | 15,191.20 |
| 2a. | Trade-in allowance | $ | 0.00 |
| 2b. | Less: Amount owing paid to: N/A | $ | 0.00 |
| 2c. | **Net Trade-In** (2a minus 2b) | $ | 0.00 |
| 2d. | Plus cash payment | $ | 600.00 |
| 2e. | Plus manufacturer's rebate | $ | 0.00 |
| 2f. | Plus (Other) N/A | $ | N/A |
| 2. | **Total Down Payment** (if negative, enter $0 and see 4a.) | $ | 600.00 |
| 3. | **Unpaid Cash Price Balance** (1 minus 2) | $ | 14,591.20 |
| 4a. | Prior credit or lease balance payment on Trade-in (paid to same as 2b.) | $ | 0.00 |
| 4b. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| 4c. | Paid to Public Officials (incl. filing fees) | $ | 147.00 |
| 4d. | (Optional) Service Contract paid to: SilverRock | $ | 1,025.00 |
| 4e. | (Optional) Service Contract paid to: N/A | $ | 0.00 |
| 4f. | Optional Gap Waiver (Debt Cancellation) paid to Seller | $ | N/A |
| 4g. | N/A pd to N/A | $ | N/A |
| 4h. | N/A pd to N/A | $ | N/A |
| 4i. | N/A pd to N/A | $ | N/A |
| 4j. | N/A pd to N/A | $ | N/A |
| 4k. | N/A pd to N/A | $ | N/A |
| 4l. | N/A pd to N/A | $ | N/A |
| 4m. | N/A pd to N/A | $ | N/A |
| 4n. | N/A pd to N/A | $ | N/A |
| 4o. | N/A pd to N/A | $ | N/A |
| 4p. | N/A pd to N/A | $ | N/A |
| 4. | **Total Other Charges and Amounts Paid to Others on Your Behalf** (4a thru 4p) | $ | 1,172.00 |
| 5. | **Amount Financed** (3+4) | $ | 15,763.20 |
| 6. | **Finance Charge** | $ | 11,453.85 |
| 7. | **Time Balance** (5+6) | $ | 27,217.05 |

**We may retain or receive a portion of any amount paid to others.**

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and are not a factor in the credit decision. In general, if you die, credit life insurance pays the unpaid part of the amount financed, assuming you made all payments on time. In general, credit disability insurance pays the scheduled payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. You will not receive credit life insurance and credit disability insurance unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☐ None

Premium $ N/A Term N/A

Insured N/A

**Credit Disability**

☐ Single ☐ Joint ☐ None

Premium $ N/A Term N/A

Insured N/A

You want the credit insurance coverages indicated.

By: N/A DOB N/A

By: N/A DOB N/A

By: N/A DOB N/A

**Property Insurance.** In general, property insurance pays for the repair or replacement of the Property if it is damaged, destroyed, or stolen. See the policies or certificates for coverage limits and other terms and conditions. You must insure the Property securing this Contract. You may provide the insurance through existing policies. You may also provide the insurance by purchasing it through any insurance company allowed by law to do business in Pennsylvania or in the state in which the Vehicle is registered and titled. The deductible amount for the insurance may not exceed $ 1,000.00. If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This property insurance premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A

☐ $ N/A Deductible, Comprehensive $ N/A

☐ Fire-Theft and Combined Additional Cov. $ N/A

☐ N/A $ N/A

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

The property insurance must protect against loss and physical damage. You must name us as beneficiary on the insurance policy. We may require additional security before we allow you to use insurance proceeds to repair or replace the Property. You will pay all amounts that insurance does not cover.

If you fail to obtain or keep insurance or to name us as beneficiary, we may obtain insurance to protect your interest and our interest in the Property. We will add the cost of insurance to the amount you owe us. Any amount we pay for insurance is due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

This is a copy view of the Authoritative Copy ...

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**

Term: 24 Months

Price: $ 1,025.00

Coverage: Powertrain Service Contract, paid to SilverRock

☐ **Optional Gap Waiver (Debt Cancellation)**

Term: N/A

Price: $ N/A

Coverage: N/A

☐ **Cosmetic Protection**

Term: N/A

Price: $ N/A

Coverage: N/A

Lena Ross 11/04/2021

By: Lena Ross **Date**

N/A N/A

By: **Date**

N/A N/A

By: **Date**

## Additional Terms of the Sales Agreement

**Definitions.** "*Contract*" refers to this Retail Installment Contract and Security Agreement. The pronouns "*you*" and "*your*" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "*we*", "*us*" and "*our*" refer to the Seller and any entity to which it may transfer this Contract. "*Vehicle*" means each motor vehicle described in the *Description of Property* section. "*Property*" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections. *"Heavy commercial motor vehicle"* means a new or used motor vehicle (other than a recreational vehicle) that is a truck or truck tractor having a manufacturer's gross vehicular weight of 13,000 pounds or more, or a semitrailer or trailer designed for use in combination with a truck or truck tractor.

**Purchase of Property.** You agree to purchase the motor vehicle (Vehicle) and services described in the Description of Property section from Seller. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. You agree to purchase the Vehicle from us on the terms of this Contract and security agreement (Contract). You understand that we are selling you the Vehicle in its present condition.

**Total Sale Price.** We gave you the opportunity to purchase the Vehicle and described services for the Total Cash Price or the **Total Sale Price**. The **Total Sale Price** is the total price of the Vehicle and any services if you buy them over a period of time. You are purchasing the items over a period of time.

The **Total Sale Price** shown in the **Truth-in-Lending Disclosure** assumes that you will make all payments as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early. This may cause your final payment to be more or less than the scheduled amount, or, at our option, we may require more or fewer payments of the scheduled amount with an adjusted final payment.

We charge and collect finance charges. These charges are not more than state or federal law allows. If you pay a finance charge or fee that is more than state or federal law allows, we will apply the charge or fee first to reduce what you owe and refund any excess to you.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Governing Law and Interpretation.** This Contract is governed by the law of Pennsylvania and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

Any provision that appoints us as an agent is not subject to the provisions of 20 Pa.C.S.A. Section 5601 *et seq.* (Chapter 56; Decedents, Estates and Fiduciaries Code). We, by exercising any of our rights under this Contract, do so for the sole benefit of us.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Breaking the Terms of this Contract.** You agree that the following are additional terms of this Contract. You will have broken the terms of this Contract if you fail to perform any obligation that you have undertaken in this Contract, except as prohibited by law.

If you break any of the terms of this Contract, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. In addition, you agree to pay reasonable attorneys' fees to the extent permitted by law if the Property is taken through legal action.

If there is more than one of you and any one of you breaks any agreement made in this Contract, we may exercise our rights against each of you or all of you.

**Seller's Rights.** If you break any of the terms of this Contract, we have all of the remedies provided by law and this Contract, subject to any opportunity to cure we may offer and you may exercise. Those remedies include:

- We may pay taxes, fees, expenses, or charges on the Property or make repairs to the Property if you have not done so. We are not required to do so. We will add any amount we pay to the amount you owe us, as allowed by law. This amount is due immediately. This amount will earn finance charges from the date we paid it at the rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take back the Property by lawful means. In taking the Property, we may not unlawfully enter onto your premises or cause a public disturbance.
- We may sell the Property. We may apply amounts we receive as provided by law to our reasonable expenses and then to your obligations.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

We may take any or all of the actions described above. Our decision not to take any of the actions does not mean that we have lost the right to take any of the actions in the future.

In addition, we may require you to pay us immediately, the remaining balance of the amount financed, finance charges and all other agreed charges if you do any of the following:

- You fail to pay one or more installment payments under this Contract.
- You fail to pay taxes levied against the Property.
- You fail to furnish proof of payment of taxes levied against the Property.

This is a copy view of the Authoritative Copy held by the designated custodian

- You use the Property for illegal purposes.
- You file for bankruptcy.
- You intentionally provide fraudulent and misleading information on a credit application.

We will mail to your last known address any required notice of intended sale or transfer of the Property. You agree that notice is reasonable if mailed to your last known address, as reflected in our records. You agree that notice mailed 15 days before the intended sale or transfer (or such other period of time required by law) is reasonable.

You agree that we may take personal property left in or on the Property subject to your right to recover the personal property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Buyer's Rights and Duties.** If we have taken back the Property, we may, at our option, return the Property to you if you pay all past due installments, late charges and our costs in retaking the Property, to the extent allowed by law. Your opportunity to get back the Property ends when we sell the Property.

You agree to pay for the costs of a lawsuit allowed by law if we take the Property through legal action. If we retake the Property other than through a lawsuit, you must pay the expenses for taking, repairing, and storing the Property as allowed by law. We may only collect these expenses from you if more than 15 days passed from the day you broke the terms of this Contract to the day we took the Property.

**Statement of Account. At your request, we will provide you with a statement of your account showing information about your payment history, including the dates and amounts of payments you have made and any other credits and charges to your account. It will also provide information about future payments and any other information required by law. We will provide you with one statement of account free of charge. We may charge you a reasonable fee as allowed by law for any additional statements that you request. You can request, and we will provide, a statement of account at any time until one year after this Contract ends.**

**Each and Every Buyer Responsible.** Each of you who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You are responsible for paying amounts owed under this Contract even if another of you has signed this Contract.
- We may hold any of you responsible for paying this Contract, even if we choose to give up our right to hold any other of you responsible.
- We may give up our interest in the Property and each of you is still responsible for paying this Contract.
- If we give up any of our rights, it will not affect your responsibility to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your responsibility to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

**Additional Rights. If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

## *Security Agreement*

**Security.** You give us a security interest in the Vehicle. You also give us a security interest in all attachments, accessories, and equipment installed or placed in or on the Vehicle. We refer to the Vehicle and any items installed or placed in or on the Vehicle as Property. You also give us a security interest in the proceeds of the Property. Our interest will not extend to consumer goods unless you acquire rights to the goods within 10 days after we enter into this Contract or the goods are installed in or affixed to the Vehicle. You assign and give a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Buyer's Responsibilities Towards Property.** You agree to the following:

- You will defend our security interest in the Property against anyone who claims to have an interest in the Property. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else. Our claim to the Property comes ahead of the claim of any of your other creditors. You agree to sign any additional documents to provide us with any additional information we may require to protect our security interest in the Property.
- You will keep the Property in your possession and in good condition. You will only use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not put the Property up for sale without written permission from us. You will not transfer any rights in the Property without first getting our written permission.
- You will pay taxes, fees and expenses on the Property when due.
- You will notify us of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. We may lawfully enter and inspect the Property.

**Insurance.** You agree to buy insurance on the Property against risks and for the amounts we reasonably require. In addition:

- You will name us as loss payee on any such policy.
- We may require added security on this Contract if we permit any insurance proceeds to be used to repair or replace the Property.
- If the insurance proceeds do not cover the amounts you still owe us, you will pay the difference.
- You will keep this insurance until all debts secured by this Contract are paid.

If you do not buy, maintain, and arrange to have us named as loss payee, as agreed above, you understand and agree:

- We may purchase insurance to protect your and our interest in the Property.
- The insurance we buy may be from an agent or company you may not choose.
- The insurance will not cover your equity in the Property.
- The premium we pay may be substantially higher than the premium you might be required to pay for the insurance you have agreed to buy on this Contract.

**Optional Gap Waiver (Debt Cancellation).** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Optional Gap Waiver (Debt Cancellation) to cover the gap liability, subject to any conditions and exclusions in the Optional Gap Waiver (Debt Cancellation) agreements.

## *Notices*

**NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

COPY VIEW

This is a copy view of the Authoritative Copy held by the designated custodian

**Summary Notice - Prepayment, Rebate, Reinstatement and Statement of Account. You may prepay all or part of the amount you owe under this Contract at any time without penalty. If you prepay, you will only pay finance charges that are earned but unpaid and all other amounts due up to the date of prepayment. Payments we receive for any unearned finance charges will be rebated to you. If you break the terms of this Contract we may take back the vehicle (Property). We may, at our option, allow you to get the Property back before we sell it and continue under this Contract (reinstate). If we allow you to reinstate this Contract, you must pay us all past due amounts, late charges and any costs we incurred in retaking the vehicle to the extent allowed by law. At your request, we will provide you with a statement of account with important information about your payment history and amounts owing.**

[X] **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## *Signature Notices*

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

You authorize us to obtain information about you and the Property you are buying from the state motor vehicle department or other motor vehicle registration authorities.

## *Signatures*

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

Lena Ross 11/04/2021
By: Lena Ross **Date**

N/A N/A
**By:** **Date**

N/A N/A
**By:** **Date**

COPY

By signing below, you agree to the terms of this Contract.

**NOTICE TO BUYER. Do not sign this contract in blank. You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights. Any holder of this consumer credit contract is subject to all claims and defenses which the buyer could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the buyer shall not exceed amounts paid by the buyer hereunder.**

**Buyer**

Lena Ross 11/04/2021
**By:** Lena Ross **Date**

N/A N/A
**By:** **Date**

N/A N/A
**By:** **Date**

**Seller**

[signature] 11/04/2021
**By:** CARVANA, LLC **Date**

VIEW

**By signing below, you acknowledge that you received a completely filled-in copy of this Contract and that you had the opportunity to read and review the Contract before you signed it.**

**Buyer**

Lena Ross 11/04/2021
**By:** Lena Ross **Date**

N/A N/A
**By:** **Date**

N/A N/A
**By:** **Date**

Court of Common Pleas of Philadelphia
County Trial Division

# Civil Cover Sheet

For Office of Judicial Records Use Only (Docket Number)

Filed and Attested by the Office of Judicial Records 11 SEP 2026 01:10 pm I. LOWELL

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Skinner, Ariann M. | Bridgecrest Credit Company, LLC |
| PLAINTIFF'S ADDRESS: 1361 S. 54th St., Philadelphia PA 19143 | DEFENDANT'S ADDRESS: 4020 E. Indian School Road, Phoenix Arizona 85018 |
| PLAINTIFF'S NAME: Tessler, Brenda | DEFENDANT'S NAME: Carvana, LLC |
| PLAINTIFF'S ADDRESS: 317 Wall Ave, Pitcairn PA 15140 | DEFENDANT'S ADDRESS: 1043 N. Front Street, Philadelphia, PA 19123 |
| PLAINTIFF'S NAME: Ross, Lena | DEFENDANT'S NAME: |
| PLAINTIFF'S ADDRESS: 1507 Federal St., Philadelphia, PA 19146 | DEFENDANT'S ADDRESS: |

TOTAL NUMBER OF PLAINTIFFS: 3

TOTAL NO. OF DEFENDANTS: 2

COMMENCEMENT OF ACTION
- [x] Complaint
- [ ] Petition Action
- [ ] Notice of Appeal
- [ ] Writ of Summons
- [ ] Transfer From Other Jurisdictions

AMOUNT IN CONTROVERSY
- [ ] $50,000.00 or less
- [x] More than $50,000.00

COURT PROGRAMS
- [ ] Arbitration
- [ ] Mass Tort
- [ ] Minor Court Appeal
- [ ] Settlement
- [x] Jury
- [ ] Savings Action
- [ ] Statutory Appeals
- [ ] Minors
- [ ] Non-Jury
- [ ] Petition
- [ ] Commerce (Completion of Addendum Required)
- [ ] W/D/Survival
- [ ] Other: ______

CASE TYPE AND CODE (SEE INSTRUCTIONS)
1C Contract

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)
13 Pa. C.S.A. § 9601 et seq. (UCC Repo Violations); 73 P.S. § 201-1 et seq. (UTPCPL Deceptive Auto Sales); 12 Pa. C.S.A. § 6222 (Unitemized Fees).

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)
N/A

IS CASE SUBJECT TO COORDINATION ORDER?
Yes ☐ ☐ ☐ No ☐ ☐ ☐

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| James A. Francis, Esq. | Francis Mailman Soumilas, P.C.<br>1600 Market St., Suite 2510<br>Philadelphia, PA 19103 |
| PHONE NUMBER: (215) 735-8600 / FAX NUMBER: 215-940-8000 | |
| SUPREME COURT IDENTIFICATION NO.: 77474 | E-MAIL ADDRESS: jfrancis@consumerlawfirm.com |
| SIGNATURE: | DATE: 9/11/2026 |

Case ID: 260901593

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**SEPTEMBER 2026** **01593**

E-Filing Number: 2609025990

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ARIANN M. SKINNER | BRIDGECREST CREDIT COMPANY, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 1361 S. 54TH ST.<br>PHILADELPHIA PA 19143 | 4020 E. INDIAN SCHOOL ROAD<br>PHOENIX AZ 85018 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| BRENDA TESSLER | CARVANA, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 317 WALL AVE.<br>PITCAIRN PA 15140 | 1043 N. FRONT STREET<br>PHILADELPHIA PA 19123 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| LENA ROSS | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 1507 FEDERAL ST.<br>PHILADELPHIA PA 19146 | |

TOTAL NUMBER OF PLAINTIFFS: 3

TOTAL NUMBER OF DEFENDANTS: 2

COMMENCEMENT OF ACTION
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition Action
- [ ] Transfer From Other Jurisdictions
- [ ] Notice of Appeal

AMOUNT IN CONTROVERSY
- [ ] $50,000.00 or less
- [x] More than $50,000.00

COURT PROGRAMS
- [ ] Arbitration
- [ ] Jury
- [ ] Non-Jury
- [x] Other: CLASS ACTION
- [ ] Mass Tort
- [ ] Savings Action
- [ ] Petition
- [ ] Commerce
- [ ] Minor Court Appeal
- [ ] Statutory Appeals
- [ ] Settlement
- [ ] Minors
- [ ] W/D/Survival

CASE TYPE AND CODE

C1 - CLASS ACTION

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

FILED
PRO PROTHY
SEP 11 2026
I. LOWELL

IS CASE SUBJECT TO COORDINATION ORDER?
YES NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ARIANN M SKINNER , BRENDA TESSLER , LENA ROSS

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JAMES A. FRANCIS | FRANCIS MAILMAN SOUMILAS, P.C.<br>1600 MARKET STREET<br>PHILADELPHIA PA 19103 |
| PHONE NUMBER: (215)735-8600 FAX NUMBER: (215)940-8000 | |
| **SUPREME COURT IDENTIFICATION NO.** | **E-MAIL ADDRESS** |
| 77474 | jfrancis@consumerlawfirm.com |
| **SIGNATURE OF FILING ATTORNEY OR PARTY** | **DATE SUBMITTED** |
| *JAMES FRANCIS* | Friday, September 11, 2026, 01:30 pm |